**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RAYMOND HAAG, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.   1:17-cv-11447 ) |
| STAPLES, INC., DREW G. FAUST, CURTIS FEENY, PAUL-HENRI FERRAND, SHIRA GOODMAN, DEBORAH A. HENRETTA, KUNAL S. KAMLANI, JOHN F. LUNDGREN, ROBERT SULENTIC, VIJAY VISHWANATH, PAUL F. WALSH, SYCAMORE PARTNERS, ARCH MERGER SUB INC., and ARCH PARENT INC., | ) JURY TRIAL DEMANDED ) ) CLASS ACTION ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action stems from a proposed transaction announced on June 28, 2017 (the "Proposed Transaction"), pursuant to which Staples, Inc. ("Staples" or the "Company") will be acquired by affiliates of Sycamore Partners.

2.     On June 28, 2017, Staples' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Arch Parent Inc. ("Parent") and Arch Merger Sub Inc. ("Merger Sub," and together with Parent and Sycamore Partners, "Sycamore").  Pursuant to the terms of the Merger Agreement, shareholders of Staples will receive $10.25 in cash for each share of Staples

common stock.

3.      On July 25, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Staples common stock.

9.      Defendant Staples is a Delaware corporation and maintains its principal executive offices at 500 Staples Drive, Framingham, MA 01702.  Staples' common stock is traded on the

NasdaqGS under the ticker symbol "SPLS."

10.    Defendant Drew G. Faust ("Faust") is a director of Staples.

11.    Defendant Curtis Feeny ("Feeny") is a director of Staples.

12.    Defendant Paul-Henri Ferrand ("Ferrand") is a director of Staples.

13.    Defendant Shira Goodman ("Goodman") is a director and has served Chief Executive Officer ("CEO") of Staples since September 2016.

14.    Defendant Deborah A. Henretta ("Henretta") is a director of Staples.

15.    Defendant Kunal S. Kamlani ("Kamlani") is a director of Staples.

16.    Defendant John F. Lundgren ("Lundgren") is a director of Staples.

17.    Defendant Robert Sulentic ("Sulentic") is a director and Chairman of the Board of Staples.

18.    Defendant Vijay Vishwanath ("Vishwanath") is a director of Staples.

19.    Defendant Paul F. Walsh ("Walsh") is a director of Staples.

20.    The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21.    Defendant Sycamore Partners is a private equity firm based in New York specializing in consumer and retail investments.

22.    Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

23.    Defendant Merger Sub is a Delaware corporation, a wholly owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24.    Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Staples (the "Class"). Excluded from the Class are defendants herein and

3

any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25.    This action is properly maintainable as a class action.

26.    The Class is so numerous that joinder of all members is impracticable.  As of June 28, 2017, there were approximately 653,441,161 shares of Staples common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27.    Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

***Background of the Company and the Proposed Transaction***

31.    Staples provides business customers with a broad assortment of products, expanded business services, and convenient ways to shop in stores, online, and through social apps.

32.    Staples Business Advantage, the Company's business-to-business division, caters to mid-market, commercial, and enterprise-sized customers by offering a one-source solution for the products and services they need, combined with best-in-class customer service, competitive pricing and a state-of-the-art ecommerce site.

33.    Staples operates throughout North and South America and Asia.

34.    On May 16, 2017, Staples issued a press release wherein it reported its financial results for the first quarter of 2017.  The Company reported a number of first quarter highlights, including that the Company grew mid-market sales in Staples Business Advantage, the Company's North American contract business, by 10 percent year over year.  Staples improved profitability in North American Retail with operating income up $4 million and operating income rate up 54 basis points year over year.  The Company improved total company gross profit rate by 49 basis points year over year to 26.0 percent.  Staples generated $258 million of cash provided by operating activities.  Moreover, Staples launched a new brand campaign that recognizes the Company's target customers and communicates the many ways Staples is already a solutions provider for businesses of all sizes.  With respect to the results, Individual Defendant Goodman commented:

> 2017 is off to a good start and, consistent with our strategy, we drove solid sales growth in the mid-market and improved profitability in North American Retail during the first quarter[.] Based on our success growing categories beyond office supplies, we're intensifying our focus on several key growth categories including

facilities supplies, breakroom supplies, furniture, technology solutions, and promotional products, or what we now refer to as 'Pro Categories'. We're pursuing this opportunity from a position of strength as we bring together the products, services, and expertise to provide a differentiated offering to business customers of all sizes.

35.    Nevertheless, the Board caused the Company to enter into the Merger Agreement, pursuant to which Staples will be acquired for inadequate consideration.

36.    The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

37.    Further, the Company must promptly advise Sycamore of any proposals or inquiries received from other parties.

38.    Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Sycamore a "matching right" with respect to any "Superior Proposal" made to the Company.

39.    Further locking up control of the Company in favor of Sycamore, the Merger Agreement provides for a "termination fee" of $171 million payable by the Company to Sycamore if the Individual Defendants cause the Company to terminate the Merger Agreement.

40.    By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

41.    The consideration to be provided to plaintiff and the Class in the Proposed Transaction is inadequate.

42.    Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

43.    The merger consideration is also substantially less than Sycamore's June 11, 2017 proposal to acquire the Company for $11.00 per share.

44.    The analyses performed by the Company's financial advisors, Barclays Capital Inc. ("Barclays") and Morgan Stanley & Co. LLC ("Morgan Stanley," and collectively with Barclays, the "Financial Advisors"), confirm the inadequacy of the merger consideration.  For example, Morgan Stanley's *Discounted Cash Flow Analysis* yielded implied per share values for the Company's common stock as high as $12.79, and Barclays' *Discounted Cash Flow Analysis* yielded implied per share values as high as $12.40.

45.    Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

46.    Meanwhile, certain of the Company's officers and directors stand to receive substantial benefits as a result of the Proposed Transaction.

47.    For example, it appears that the Staples management team, including Individual Defendant Goodman, will retain their employment positions following the close of the merger.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

48.    Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

49.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

50.     The Proxy Statement omits material information regarding the analyses performed by the Company's Financial Advisors.

51.     For example, with respect to Barclays' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:   (i) the terminal value of the Company; (ii) the inputs and assumptions underlying the range of discount rates from 8.91% and 10.21% and the range of EV/LTM multiples of 4.5x to 6.5x; (iii) the Company's total debt, non-controlling interest, and cash and cash equivalents; and (iv) the Company's fully diluted shares outstanding as provided by Company management.

52.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:   (i) the terminal value of the Company; (ii) the inputs and assumptions underlying the range of discount rates from 8.1% to 9.8% and the range of EV/LTM multiples of 4.5x to 6.5x; (iii) the Company's total debt, non-controlling interest, and cash and cash equivalents; and (iv) the fully diluted shares of the Company common stock outstanding as provided by Company management.

53.     With respect to the Financial Advisors' *Illustrative Leveraged Buyout Analysis*, the Proxy Statement fails to disclose the inputs and assumptions underlying the leverage multiple, financing terms, exit multiples, and target internal rates of return applied by the Financial Advisors in the analysis.

54.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

55.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "Reasons for the Merger; Recommendation of the Board"; (iii) "Opinions of the Company's Financial Advisors"; and (iv) "Company Financial Forecasts; Other Company Information."

56.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Staples' stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Staples**

57.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Staples is liable as the issuer of these statements.

59.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

60.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

61.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on

the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

62.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

63.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

64.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Sycamore

65.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66.     The Individual Defendants and Sycamore acted as controlling persons of Staples within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Staples and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

67.     Each of the Individual Defendants and Sycamore was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

10

68.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Proxy Statement.

69.    Sycamore also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

70.    By virtue of the foregoing, the Individual Defendants and Sycamore violated Section 20(a) of the 1934 Act.

71.    As set forth above, the Individual Defendants and Sycamore had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.   As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  August 4, 2017                          **MATORIN LAW OFFICE, LLC**

By:  */s/ Mitchell J. Matorin*
       Mitchell J. Matorin (BBO# 649304)
       18 Grove Street, Suite 5
       Wellesley, MA 02482
       (781) 453-0100

**OF COUNSEL:**                                  *Attorneys for Plaintiff*

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310